# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

WILLIAM FRANCIS, JR.,          :
:
    Plaintiff,            :
:
v.                 :   Civ. No. 07-015-LPS
:
WARDEN THOMAS CARROLL, et al.,    :
:
    Defendants.          :

---

William Francis, Jr., Wilmington, Delaware, Pro Se Plaintiff.

Ophelia Michelle Waters, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

March 29, 2011
Wilmington, Delaware

**Stark, District Judge:**

I. **INTRODUCTION**

Plaintiff, William Francis, Jr. ("Francis"), a former inmate at the James T. Vaughn Correctional Center ("VCC") (formerly called the Delaware Correctional Center) in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and has been allowed to proceed *in forma pauperis*. (D.I. 6) Pending before the Court is State Defendants' Motion for Summary Judgment. (D.I. 98) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Court will grant the motion.

II. **BACKGROUND**

Francis filed his Complaint on January 9, 2007, and amended it on April 23, 2007. (D.I. 2, 10) Francis was housed at the VCC when he filed the original Complaint. He has a periodontal condition and alleges that former VCC warden Thomas Carroll ("Carroll") violated his rights when he denied him access to dental floss and discriminated against him when inmates at other DOC institutions were given access to dental floss. Francis alleges that Stan Taylor ("Taylor"), as Commissioner of the Delaware Department of Correction ("DOC"), authorized a ban on dental floss and failed to improve dental services for inmates at the VCC when he contracted for medical care with Correctional Medical Services ("CMS"), the former medical provider for the DOC. Francis alleges that Joyce Talley ("Talley"), the Bureau Chief for the Bureau of Management Services of the DOC, was in charge of oversight of prisoner health care and CMS' compliance with its contract and knew, or should have known, that Plaintiff's constitutional rights were being violated as a result of improper treatment of his dental condition.

On September 22, 2009, the Court granted CMS' Motion for Summary Judgment. The

1

Court concluded that CMS was not deliberately indifferent to Francis' dental needs and that it did not violate the Eighth Amendment. (D.I. 93) The Court also found that CMS did not violate Francis' Fourteenth Amendments rights to substantive due process or equal protection. (*Id.*)

Francis was diagnosed with periodontal disease in 1997. (D.I. 77 Ex. A at 101) He was housed at the VCC from January 6, 2004 until his release on May 14, 2008. (D.I. 77 Ex. A at 28, 102) Francis testified that, prior to July 1, 2005, when CMS became the contract medical provider for the DOC, treatment for his periodontal disease included cleanings, a tooth extraction, and non-surgical procedures. (D.I. 77 Ex. A at 103-16) Prior to 2005, Francis submitted five grievances with CMS' predecessor, First Correctional Medical ("FCM"), and/or with the VCC seeking permission to possess and use string dental floss or dental toothpicks. (*Id.* at 110-22) Three grievances were denied as non-grievable because string dental floss is not permitted in the VCC for security reasons, one grievance was resolved informally, and another grievance was treated as an appeal and forwarded to the Medical Grievance Committee for further action. (D.I. 50 at ¶¶ 1-4; D.I. 77 Ex. A at 80-81, Exs. B-4-B-6, B-8-B-11) Although Francis was not allowed to possess string dental floss, as of September 10, 2007 the commissary sold dental loops or bands for dental care in lieu of string floss after finding that it poses a lesser security risk. (D.I. 77 Ex. A at 50, 58-59) Prior to that time, the DOC did not allow dental floss of any type inside the VCC because of security concerns concerning string dental floss and its potential uses as a tool or rope. (D.I. 77 Ex. A at 51, 57; D.I. 99 Ex. C)

Dental records indicate that Francis received dental treatment as follows: in 2005 on July 28, August 22, and September 2; in 2006 on December 21; and in 2007 on February 23, August 15, and August 21. (D.I. 77 Ex. A at 122-24, 132-34, 137-40; Ex. B-2) Treatment consisted of

2

perio evaluations, treatment plans, x-rays, teeth scalings, Cavatron cleanings, and perio charting. (D.I. 77 Ex A at 122-24, 137) A December 7, 2006 letter to Francis from the CMS quality assurance monitor noted Francis' documented periodontal disease and Francis' request for floss and picks. (D.I. 77 Ex. B-112) Francis was advised the use of floss and picks in the institution is a security issue and could not be authorized. (*Id.*) Francis was advised to submit a "sick call slip" to seek medical treatment if he continued to have periodontal problems since he had not requested dental care in over a year. (*Id.*) Francis then submitted a sick call request on December 13, 2006, and was seen within a few days. (D.I. 77 Ex. A at 130, 133)

State Defendants Taylor, Carroll, and Talley ("State Defendants") move for summary judgment on the grounds that they did not violate Francis' Eighth and Fourteenth Amendment rights. (D.I. 98, 99) When Francis did not respond to the motion, on September 27, 2010, the Court directed Francis to respond by October 12, 2010. Francis was advised that if he did not file a response, the Court would decide the motion on the papers submitted. (D.I. 100) Francis did not file a response.

## III. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a

4

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Francis did not respond to the Motion for Summary Judgment. Nonetheless, the Court will not grant the entry of summary judgment without considering the merits of State Defendants' unopposed Motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that "district court should not have granted summary judgment solely on basis that a motion for summary judgment was not opposed").

## IV. DISCUSSION

### A. Eighth Amendment

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim of an Eighth Amendment violation, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983

5

where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. In addition, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Finally, the United States Court of Appeals for the Third Circuit has concluded that prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

As previously determined by this Court when it granted CMS' Motion for Summary Judgment, Francis did not demonstrate that the medical provider was deliberately indifferent to his dental needs. (D.I. 93) Francis' main claim against the State Defendants is that they would not allow him to possess dental floss. Prior to September 2007, inmates at the VCC were not allowed to possess dental floss of any kind due to security concerns. The prohibition was relaxed in September 2007 to the extent that inmates could purchase dental loops from the commissary. (D.I. 99 ex. C) Dental loops provide the same oral hygiene function as dental floss, but the product is not in string form. (*Id.*) Despite the prohibition against dental floss, dental records indicate that Francis received continual dental care, including frequent cleanings and scalings.

Moreover, there is no evidence that the State Defendants, all prison administrators, were deliberately indifferent to Francis' dental needs. As prison administrators they were entitled to rely upon the medical provider to provide Francis the dental care he needed. Francis acknowledged that Taylor forwarded his complaints to medical and, at least on one occasion, medical responded to his complaint. (D.I. 77, Ex. A at 74) As noted above, dental care was provided. No reasonable jury could find that the State Defendants violated Francis' Eight Amendment rights. Therefore, the Court will grant their motion for summary judgment on the dental needs claim.

B. **Fourteenth Amendment**

Francis also raises due process and equal protection claims against the State Defendants. The State Defendants move for summary judgment on the grounds that the claims are brought against them in their supervisory positions and that Francis has failed to show a violation of his constitutional rights.

Francis sued Carroll for denying him access to dental floss but has never spoken to him or had a direct response from him on the issue. Francis noted that Carroll "always delegated it to someone else." (D.I. 77 Ex. A at 75, 79) According to Francis, Carroll knew, or should have known, that dental floss is a minimal standard of dental treatment. (*Id.* at 79) Francis sued Taylor for authorizing a ban on dental floss. (*Id.* at 74) Finally, he sued Talley because she was involved in supervising the medical contract with CMS. (*Id.* at 76-77) Francis made no attempt to contact Taylor or Talley. (*Id.* at 85)

This Court has previously determined that Francis may not rely on substantive due process as a separate basis for his claims inasmuch as his claims fall within the express guarantee

7

of the Eighth Amendment. (*See* D.I. 93) ("The Eighth Amendment is an explicit textual source of constitutional protection requiring the Plaintiff's claim be analyzed under standards appropriate to the Eighth Amendment, not under due process standards."); *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Hence, he cannot prevail on this issue.

Francis further claims that the State Defendants violated his right to Equal Protection under the Fourteenth Amendment. Under the Equal Protection Clause, persons who are similarly situated should be treated in the same manner. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination, which means that a plaintiff "must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Francis was treated no differently than other inmates at the VCC. None were allowed to possess dental floss due to security concerns. (*See* D.I. 99, ex. C). Notably, there is nothing in the record that indicates the prohibition of dental floss was based upon anything other than security concerns. Indeed, Francis was advised that his request for dental floss was denied, not for medical reasons, but because of security reasons. The regulation bears a rational relationship to the legitimate penological interest of prison safety. Therefore, the Court concludes there has been no violation of Francis' right to equal protection.

Finally, it is evident that Francis sued the State Defendants based upon their supervisory positions. As is well established, "[a] defendant in a civil rights action must have personal

8

involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, __ U.S.__, 129 S.Ct. 1937, 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949.). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates'

9

violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at *5.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also, e.g., Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (stating in light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[1] *See Williams v. Lackawanna County Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates

---

[1] "'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

10

had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample*, 885 F.2d at 1117-1118; *see also Iqbal*, 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. April 11, 2005) (not published).

At no time did Francis ever make Taylor or Talley aware of his dental concerns. As for Carroll, he forwarded Francis' concerns to the medical staff and, as discussed above, there is no evidence of record showing a violation of Francis' constitutional rights. Francis received dental treatment and, the prohibition on dental floss – one of his main complaints – was due to security concerns.

Based upon the foregoing, the Court will grant the State Defendants' Motion for Summary Judgment as to the Fourteenth Amendment claims.

## V. **CONCLUSION**

For the above stated reasons the court will grant Defendants' Motion for Summary Judgment. An appropriate Order follows.